E. V. HOLMDEN *et al.* v. M. W. JANES.

AGREEMENT *to Convey Land — Sufficient Consideration.* Where G. entered into a written contract with J. and H. to sell and convey to them a tract of land, and the grantees paid to him the full purchase-price, a part of which was the transfer and possession of twenty-four acres of land, and afterward G.'s title to the tract he had agreed to convey was extinguished, and subsequently his son, who as an heir of his father had received a share of the twenty-four acres transferred by J. and H., became the purchaser of the tract of land from the owner thereof, and thereafter agreed with J. and H. to carry out the contract made by his father with them, and J. and H. relied and acted upon the promise of the son, *held*, that the agreement of the son was based upon sufficient consideration.

*Motion for Rehearing.*

THE opinion in *Holmden v. Janes,* supra, was filed on May 10, 1889. The defendant in error filed a motion for a rehearing, which was overruled at the session of the court in February, 1890.

*Douthitt, Jones & Mason,* and *A. H. Case,* for plaintiff in error.

*J. G. Waters,* and *A. Bergen,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: James R. Greer purchased the land in controversy from Johnson and son, who held an equitable interest therein. On the 18th day of October, 1873, he entered into a written agreement with Heman Janes and Ed. V. Holmden to sell or exchange this land to them for $190 in money, and the conveyance from them of twenty-four acres of land on Mill creek, in Wabaunsee county. James R. Greer was paid the $190, and given possession of the twenty-four acres of land. In 1876, there being default in the payment to the railroad company from Johnson and son for the land in dispute, the railroad company foreclosed the contract, and purchased the premises at a judicial sale. On October

23d of the same year, the railroad company sold and conveyed the premises to Joseph D. Greer, the son of James R. Greer, who had entered into the written agreement with Janes and Holmden. After Joseph D. Greer had obtained title to the land, he promised to carry out the written agreement of his father with Janes and Holmden.

Upon the argument for a rehearing it was earnestly insisted by the counsel for M. W. Janes, the plaintiff below, that the promise or agreement of Joseph D. Greer to carry out the contract of James R. Greer, deceased, with Janes and Holmden of October 18, 1873, was without consideration, and therefore void, and not binding upon anyone. Counsel say that—

"Joseph D. Greer was under neither legal nor moral obligation to carry out that agreement made by his father. His title was not derived through his father. His father's rights and equities had long before been swept away and ended, and he came in, as any stranger might have come in, and purchased directly from the railroad company, as any stranger might have done, and was no more bound by his dead father's contract than any stranger would have been."

If the premises of counsel were true, we are inclined to think that the promise or statement of Joseph D. Greer would not amount to anything. It appears, however, from the record that his father, James R. Greer, received of Janes and Holmden $190, and also the possession of twenty-four acres of land, under the written contract for a conveyance of this land to them. James R. Greer paid taxes on the twenty-four acres of land, and it descended to his heirs and was by them divided. When an exchange of lands was made by E. V. Holmden and Heman Janes, Janes made a conveyance of the land in controversy to Holmden, and Holmden took the same at its full value, making no deduction on account of any defect that might exist in the title. Joseph D. Greer is the son of James R. Greer, deceased, and as such son and heir inherited a portion of the estate, and also a part of the land which his father received from Janes and Holmden as part payment upon the land in this action. If Janes and Holmden, having

paid for the land in controversy to James R. Greer, never got anything, then they had a right of action against the estate of James R. Greer for breach of contract; but the promise of Joseph D. Greer to them to carry out the agreement of his father, which was accepted and acted upon by them, prevented them from bringing any action against the estate, and also preserved to Joseph D. Greer and the other heirs of James R. Greer the real estate which was divided by them.

With this view, there was ample consideration for the agreement of Joseph D. Greer, and the second part of the syllabus in the opinion heretofore filed was based upon the theory that the agreement of Joseph D. Greer was a valid one, with a sufficient consideration. We have ordered a new trial only. If it shall appear upon the re-trial that James R. Greer left no estate, and that Joseph D. Greer received no share of the twenty-four acres referred to, then, we think, his promise and statement were without consideration, and not binding on him. The motion for a rehearing will be overruled.

All the Justices concurring.